## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JASMINE STEVENS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> SALESLOFT, INC.; and APPFOLIO, INC., <br><br> Defendants. | **Civil Action File No. _____** <br><br> **Complaint – Class Action** <br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Jasmine Stevens ("Plaintiff" or "Ms. Stevens"), individually and on behalf of all others similarly situated, through the undersigned counsel, hereby alleges the following against Salesloft, Inc. ("Salesloft") and AppFolio, Inc. ("AppFolio") (collectively "Defendants"). Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiff specifically alleges as follows:

## NATURE OF THE CASE

1. Plaintiff brings this class action against Defendants for their failure to exercise reasonable care in securing and safeguarding individuals' sensitive

personal data on a massive scale.

2.    Between approximately August 18 and August 22, 2025, cybercriminals obtained access to Salesloft's server systems and copied a number of files out of its network (the "Data Breach"). The stolen data included individuals' full names, dates of birth, addresses, and Social Security numbers (collectively, the "Private Information" or "PII").

3.    Defendants only recently notified Plaintiff and putative "Class" (defined below) members that the Data Breach involved this highly sensitive data.

4.    Defendants' data security failures enabled the hackers to steal and misuse the Private Information of Plaintiff and Class members.  These failures led to the compromise and fraudulent misuse of Plaintiff and other Class members' Private Information and placed them at a serious, immediate, and ongoing risk of continued misuse. Additionally, Defendants' failures resulted in Plaintiff and Class members incurring costs and expenses associated with the time spent and the loss of productivity addressing and attempting to ameliorate the negative impacts of the Data Breaches, as well as emotional distress associated with constant monitoring of personal banking and credit accounts and knowing their Private Information is in the hands of cybercriminals.

5.    Mitigation efforts and dealing with the actual and future consequences of the Data Breach has and/or will also create a number of future consequences for

Plaintiff and Class members—including, as appropriate, reviewing records of fraudulent charges for services billed but not received, purchasing credit monitoring and identity theft protection services, the imposition of withdrawal and purchase limits on compromised accounts, initiating and monitoring credit freezes, the loss of property value of their personal information, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breaches.

6.    The Data Breach was caused and enabled by Defendants' violations of their obligations under statutory and common law to abide by best practices and industry standards concerning the security of records and highly sensitive information.  Defendants failed to comply with security standards and allowed their customers Private Information to be compromised, which compromise could have been prevented.

7.    Accordingly, Plaintiff asserts claims for negligence, breach of third-party beneficiary contract, and unjust enrichment/quasi-contract; Plaintiff also seeks injunctive relief, monetary damages, statutory damages, as well as all other relief as authorized in equity or by law.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) ("CAFA") because (a) there are 100 or more class members, (b) at least one Class member is a citizen of a state that is diverse from Defendants'

citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

9.     The Court has personal jurisdiction over Salesloft because it is a Georgia citizen headquartered in Georgia, and it engages in substantial activity in this state.

10.     This Court has personal jurisdiction over AppFolio because it is engaged in substantial and not isolated activity in Georgia and has sufficient minimal conducts with this state by virtue of its engaging in business in Georgia, including by contracting with Georgia-headquartered Salesloft for its software platform and collecting and/or storing Plaintiff's and Class Members' Private Information in the state, which activities and business give rise to Plaintiff's and Class Members' causes of action alleged herein.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants maintains its principal place of business in this District and therefore resides in this District pursuant to 28 U.S.C. § 1391(c)(2). A substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## **PARTIES**

### A.     **Plaintiff Jasmine Stevens**

12.     Plaintiff Jasmine Stevens is an adult individual and resident of Bedford, Ohio.

4

13.     On or about October 6, 2025, Plaintiff Stevens received a notification letter from AppFolio alerting her to the Data Breach and that her Private Information was compromised by cybercriminals.

14.     The letter also offered enrollment in Cyberscout identity protection service, which was and continues to be woefully inadequate. In the months and years following the Data Breaches, Plaintiff Stevens and the Class have and will continue to experience a slew of harms as a result of Defendants' ineffective data security measures.

15.     Although Plaintiff Stevens is spending time attempting to mitigate the harm the Data Breach has had on her life, she is still unsure as to the full extent of the Breach and ongoing and future harm she now faces.

**B.      Defendant Salesloft, Inc.**

16.     Defendant Salesloft, Inc. is incorporated under Delaware law with its principal place of business at 1180 W Peachtree Street NW, Suite 2400, Atlanta, Georgia 30309.

**C.      Defendant AppFolio, Inc.**

17.     Defendant AppFolio, Inc. is incorporated under Delaware law with its principal place of business at 70 Castilian Drive, Santa Barbara, California 93117.

## FACTS

18.    Salesloft is a SAAS company providing software products to business clients. It offers the Drift Platform, a tool that provides AI chat functionality, sales automation, and workflow solutions through SAAS applications. As part of its operations, Salesloft stores a vast amount of its customers' Private Information. In doing so, Defendants were entrusted with, and obligated to safeguard and protect, the Private Information of Plaintiff and the Class in accordance with all applicable laws.

19.    AppFolio is a Salesloft client that uses the Drift Platform for customer relation management functionality in connection with AppFolio's real estate services. As part of its operations, AppFolio stores a vast amount of its customers' Private Information. In doing so, Defendants was entrusted with, and obligated to safeguard and protect, the Private Information of Plaintiff and the Class in accordance with all applicable laws.

20.    Despite sending out notification letters to Class Members, Defendants have not yet articulated in detail the extent of the Breach, the identity(ies) of the cybercriminal(s) who carried out the attacks on its network, or how the compromised information may have been used.

21.     Upon information and belief, the Data Breach exposed the Private Information of over 70,000 individuals' information stored on Defendants' servers, including that of Plaintiff and members of the Class.

22.     The Data Breach occurred because Defendants failed to take reasonable measures to protect the Private Information they collected and stored. Among other things, Defendants failed to implement data security measures designed to prevent this attack, despite repeated public warnings to global workplaces about the risk of cyberattacks and the highly publicized occurrence of many similar attacks in the recent past.  Defendants did not properly contain this data, which requires a heightened level of protection. Defendants failed to disclose to Plaintiff and Class members the material fact that they did not have adequate data security practices to safeguard personal data, and in fact falsely represented that its security measures were sufficient to protect the Private Information in its possession.

23.     Had Plaintiff known that her Private Information would be stored by Defendants using improper and inadequate security measures, she would have reevaluated what information she chose to provide to Defendant, which collects and stores the data of thousands of customers.

24.    Defendants were aware of or should have been aware of the risk data breaches are to SAAS companies, which have had well-publicized breach from misuse or misconfigurations over recent years.

25.    Defendants operate major national software companies, yet they inexplicably did not allocate adequate resources for cybersecurity protection of this information.

26.    Ponemon Institute, an expert in the annual state of cybersecurity, has indicated that 2021 had the highest average cost of data breach in the past 17 years.[1]

## A.    Damages to Plaintiff and the Class Resulting from the Data Breach

27.    Plaintiff and the Class have been damaged by the compromise of their Private Information in the Data Breaches.

28.    The Private Information obtained by hackers and scammers is an extremely valuable commodity that is commonly traded on the black market and results in the diminishment of the value of a person's electronic presence years into the future when it is misused.

29.    Plaintiff and the Class have experienced or currently face a substantial risk of fraudulent misuse of their Private Information, including but not limited to,

---

[1] IBM Security, *Cost of a Breach Data* Report, PONEMON INST. (2021), https://www.ibm.com/security/data-breach.

loss of funds from bank accounts, fraudulent charges on credit cards, targeted advertising, suspicious phones calls, and other similar forms of identity theft.

30.    Plaintiff and Class members have also suffered a loss of the property value of their Private Information when it was acquired by cyber thieves in the Data Breaches.  Numerous courts have recognized the propriety of the loss of the property value of personal information in data breach cases.

31.    Members of the Class have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts for misuse.

32.    According to the U.S. Department of Justice Bureau of Justice Statistics, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.

33.    Similarly, the FTC cautions that identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[2]

---

[2] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official

34.     Identity thieves can use the victim's Private Information to commit any number of frauds, such as obtaining a job, loans, or even giving false information to police during an arrest.  Private Information can be used to submit false insurance claims, obtain prescription drugs or get medical treatment in the victim's name.  As a result, Plaintiff and Class members now face a real and continuing immediate risk of identity theft and other problems associated with the disclosure of their Social Security numbers and will need to monitor their credit and tax filings for an indefinite duration.

**B.     The Value of Privacy Protections and Private Information**

35.     The fact that Plaintiff and Class members' Private Information was stolen—and is likely presently being offered for sale to cyber criminals—demonstrates the monetary value of the Private Information.

36.     At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy.  Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's

---

State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number[.]" *Id*.

10

something on the order of the life blood, the free flow of information.[3]

37.     Commissioner Swindle's 2001 remarks are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[4]

38.     The FTC has also recognized that consumer data is a new (and valuable) form of currency.  In an FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency.  The larger the data set, the greater potential for analysis—and profit.[5]

---

[3] *Public Workshop: The Information Marketplace: Merging and Exchanging Consumer Data*, FED. TRADE COMM'N Tr. at 8:2-8 (Mar. 13, 2001), https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf.

[4] *See* Julia Angwin & Emily Steel, *Web's Hot New Commodity: Privacy*, THE WALL STREET JOURNAL (Feb. 28, 2011), http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html [hereinafter *Web's New Hot Commodity*] (last visited Oct. 1, 2021).

[5] *Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable*, FED. TRADE COMM'N (Dec. 7, 2009), https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

39.    Recognizing the high value that consumers place on their Private Information, many companies now offer consumers an opportunity to sell this information.[6]  The idea is to give consumers more power and control over the type of information that they share and who ultimately receives that information.  And, by making the transaction transparent, consumers will make a profit from their Private Information.  This business has created a new market for the sale and purchase of this valuable data.

40.    Plaintiff and Class Members place a high value not only on their Private Information, but also on the privacy of that data.  Researchers have begun to shed light on how much consumers value their data privacy, and the amount is considerable.  Indeed, studies confirm that the average direct financial loss for victims of identity theft in 2014 was $1,349.[7]

41.    At relevant times, Defendants was well-aware, or reasonably should have been aware, that the Private Information it maintains is highly sensitive and could be used for wrongful purposes by third parties, such as identity theft and fraud.  Defendants should have particularly been aware of these risks given the significant number of data breaches affecting the staffing industry.

---

[6] *Web's Hot New Commodity*, *supra* note 10.
[7] *Victims of Identity Theft*, *supra* note 13, at 7.

42.    Had Defendants followed industry guidelines by adopting security measures recommended by experts in the field, Defendants would have prevented intrusion into their systems and, ultimately, the theft of customers' Private Information.

43.    Given these facts, any institution that transacts business with its customers and then compromises the privacy of those customers' Private Information has thus deprived them of the full monetary value of the transaction.

44.    Due to Defendants' lax data security practices, procedures, and protocols, Plaintiff and the other Class members now face a greater risk of continuous identity theft due to cybercriminals' (a) recognition of this same value, and (b) intent to misuse the compromised Private Information in order to capitalize thereon. In fact, darknet markets generate millions in revenue selling stolen personal data.[8] Ars Technica recently found "several thousand vendors selling tens of thousands of stolen data products on 30 darknet markets."[9]

## **CLASS ACTION ALLEGATIONS**

45.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46.     Plaintiff brings this action individually and on behalf of all other

---

[8] https://arstechnica.com/tech-policy/2022/12/darknet-markets-generate-millions-in-revenue-selling-stolen-personal-data/ (last accessed June 5, 2024).
[9] *Id.*

persons similarly situated, pursuant to Federal Rule of Civil Procedure 23 on

behalf of a Nationwide Class defined as:

> All persons whose Private Information was compromised
> as a result the Data Breach occurring in August of 2025.

47.    The Nationwide Class is collectively defined herein as the "Class."

48.    Excluded from the Class are Defendants and Defendants' affiliates,

parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is

any judicial officer presiding over this matter and the members of their immediate

families and judicial staff.

49.    Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in

individual actions alleging the same claims.

50.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The

members of the Class are so numerous that joinder of all class members would be

impracticable.  On information and belief, the Nationwide Class numbers in the

tends of thousands.

51.    **Commonality and Predominance—Federal Rule of Civil**

**Procedure 23(a)(2).** Common questions of law and fact exist as to all members of

the Class and predominate over questions affecting only individual members of the

Class.  Such common questions of law or fact include, *inter alia*:

a.   Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

b.   Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

c.   Whether Defendants properly implemented its purported security measures to protect Plaintiff's and Class members' Private Information from unauthorized capture, dissemination, and misuse;

d.   Whether Defendants took reasonable measures to determine the extent of the Data Breach after it first learned of same;

e.   Whether Defendants disclosed Plaintiff's and Class members' Private Information in violation of the understanding that the Private Information was being disclosed in confidence and should be maintained;

f.   Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and Class members' Private Information;

g.   Whether Defendants was negligent in failing to properly secure and protect Plaintiff's and Class members' Private Information;

h.   Whether Defendants was unjustly enriched by its actions; and

i.   Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

Defendants engaged in a common course of conduct giving rise to the legal rights

sought to be enforced by Plaintiff, on behalf of herself and other members of the

Class. Similar or identical common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

52.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all class members were similarly injured through Defendants' uniform misconduct described above and were thus all subject to the Data Breach alleged herein. Further, there are no defenses available to Defendants that are unique to Plaintiff.

53.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Nationwide Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and she will prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

54.    **Injunctive Relief-Federal Rule of Civil Procedure 23(b)(2).** Defendants has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

55.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.  Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

56.    **Jurisdictional Amount.** This action meets the jurisdictional amount under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because as alleged in Paragraph 36, the amount of damages sought on behalf of the putative class exceeds $5,000,000.00. The putative class consists of thousands or more class members who seek to recover for the injuries suffered from

Defendant's failure to safeguard their Private Information and the violations

alleged and described in this Complaint.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

57.     Plaintiff fully incorporates by reference all of the above paragraphs, as

though they are fully set forth herein.

58.     Upon Defendants accepting and storing the Private Information of

Plaintiff and the Class in its computer systems and on its networks, Defendants

undertook and owed a duty to Plaintiff and the Class to exercise reasonable care to

secure and safeguard that information and to use commercially reasonable methods

to do so.  Defendants knew that the Private Information was private and

confidential and should be protected.

59.     Defendants owed a duty of care not to subject Plaintiff and the Class's

Private Information to an unreasonable risk of exposure and theft because Plaintiff

and the Class were foreseeable and probable victims of any inadequate security

practices.

60.     Defendants owed numerous duties to Plaintiff and the Class, including

the following:

> i.     To exercise reasonable care in obtaining, retaining, securing,
> safeguarding, deleting and protecting Private Information in its
> possession;

     ii.    To protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

     iii.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

61.    Defendants also breached its duty to Plaintiff and Class members to adequately protect and safeguard Private Information by disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information.  Furthering its dilatory practices, Defendants failed to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, despite the known risk and foreseeable likelihood of breach and misuse, which permitted a malicious third party to gather Plaintiff and Class members' Private Information and misuse the Private Information and intentionally disclose it to others without consent.

62.    Defendants knew, or should have known, of the risks inherent in collecting and storing Private Information and the importance of adequate security. Defendants knew or should have known about numerous well-publicized data breaches similar to the Data Breach that are the subject of this Complaint.

63.    Defendants knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class members' Private Information.

64.    Defendants breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

65.    Because Defendants knew that a breach of its systems would damage thousands of its customers, including Plaintiff and Class members, Defendants had a duty to adequately protect its data systems and the Private Information contained thereon.

66.    Defendants' duty of care to use reasonable security measures arose because of the special relationship that existed between Defendants and their customers, which is recognized by laws and regulations and common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class members from a data breach.

67.    In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

68.     Defendants' duty to use reasonable care in protecting confidential data arose not only because of the statutes industry standards described herein, but also because Defendants are bound by industry standards to protect confidential Private Information.

69.     Defendants' own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their Private Information.  Defendants' misconduct included failing to: (1) secure Plaintiff's and Class members' Private Information; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent these types of data breaches.

70.     Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information, and by failing to provide timely notice of the Data Breaches.  The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

    i.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

    ii.    Failing to adequately monitor the security of Defendants' networks and systems;

    iii.    Allowing unauthorized access to Class members' Private Information; and

    iv.    Failing to timely notify Class members about the Data Breach

so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

71.    Through Defendants' acts and omissions described in this Complaint, including their failure to provide adequate security and their failure to protect Plaintiff and Class members' Private Information from being foreseeably captured, accessed, disseminated, stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff and Class members' Private Information during the time they were within Defendants' possession or control.

72.    Defendants' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to failing to adequately protect the Private Information and failing to provide Plaintiff and Class members with timely notice that their sensitive Private Information had been compromised.

73.    Neither Plaintiff nor the other Class members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint.

74.    As a direct and proximate cause of Defendants' conduct, Plaintiff and Class members suffered damages as alleged above.

75.    Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and

monitoring procedures; and (iii) immediately provide lifetime free credit monitoring to all Class members.

## COUNT II
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

76.     Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

77.     Salesloft entered into uniform written contracts with its clients, including AppFolio, to provide an integrated software platform and related services in connection with customer relationship management and related functions.

78.     Pursuant to these contracts, Salesloft's clients, including AppFolio, agreed to provide Salesloft with compensation and Plaintiff's and Class Members' Private Information, and Salesloft received Plaintiff's and Class Members' Private Information from Salesloft's clients in the course of providing its software platform and related services.

79.     In exchange for payment and Plaintiff and Class Members' Private Information, Salesloft promised to provide its software services to AppFolio.

80.     As a material term of these contracts, each Defendant promised the other to implement specific, adequate, and industry-standard data security measures to safeguard Plaintiff's and Class Members' Private Information from unauthorized disclosure, to maintain the Private Information's confidentiality and to timely notify Plaintiff and Class Members of the Data Breach.

81.    Each Defendant was obliged to use adequate data security measures to maintain the privacy of Plaintiff and Class Members' Private Information. Plaintiff and Class Members are the intended beneficiaries of the contracts between Salesloft and AppFolio.

82.    These contracts between Salesloft and its clients, including AppFolio, were made to facilitate the transactions between Salesloft's clients and their customers, to integrate Plaintiff's and Class Members' data, and to store and manage Plaintiff's and Class Members' Private Information, and to sufficiently safeguard that data with technologically sound measures, such that they were made expressly for the benefit of Plaintiff and Class Members as the intended third-party beneficiaries.

83.    Salesloft knew Plaintiff and Class Members were involved and were meant to benefit from the transactions that were subject to these contracts between Salesloft.

84.    Salesloft knew that if it breached its contractual obligation to adequately safeguard its clients' customers' Private Information, Plaintiff and Class Members would be harmed.

85.    Salesloft breached these contracts with AppFolio and its other clients, by, among other acts and omissions, failing to use reasonable data security measures or implement adequate protocols and employ training sufficient to

protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

86.    AppFolio knew Plaintiff and Class Members were involved and were meant to benefit from the transactions that were subject to these contracts between it and AppFolio.

87.    AppFolio knew that if it breached its contractual obligation to adequately safeguard its clients' customers' Private Information, Plaintiff and Class Members would be harmed.

88.    AppFolio breached these contracts with Salesloft by, among other acts and omissions, failing to use reasonable data security measures or implement adequate protocols and employe training sufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

89.    As a direct and proximate result of Defendants' breaches of these contracts, Plaintiff and Class Members have suffered and will continue to suffer injuries as set forth herein, and are entitled to damages sufficient to compensate for the losses they sustained as a direct result thereof.

## COUNT III
## UNJUST ENRICHMENT/QUASI-CONTRACT

90.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

91.    Plaintiff and Class members conferred a benefit on Defendants.

Specifically, they provided Defendants with their Private Information, which Private Information has inherent value.  In exchange, Plaintiff and Class members should have been entitled to have Defendants protect their Private Information with adequate data security.

92.    Defendants knew that Plaintiff and Class members conferred a benefit on Defendants and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it.  Defendants profited from Plaintiff's retained data and used Plaintiff and Class members' Private Information for business purposes.

93.    Defendants failed to secure Plaintiff and Class members' Private Information and, therefore, did not fully compensate Plaintiff and Class members for the value that their Private Information provided.

94.    Defendants acquired the Private Information through inequitable record retention as it failed to disclose the inadequate security practices previously alleged.

95.    If Plaintiff and Class members knew that Defendants would not secure their Private Information using adequate security, they would have made alternative choices that excluded Defendants or that would have limited the information entrusted to Defendant.

96.    Plaintiff and Class members have no adequate remedy at law.

97.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class members conferred on it.

98.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them.  In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class members overpaid.

## COUNT IV
## DECLARATORY/INJUNCTIVE RELIEF

99.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

100.   This court is authorized under 28 U.S.C. § 2201 *et seq.* to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief.  Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the state statutes described in this Complaint.

101.   An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information, and whether Defendants is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breach that compromise

their Private Information. Plaintiff and the Class remain at imminent risk that further compromises of their Private Information will occur in the future.

102.    The Court should also issue prospective injunctive relief requiring Defendants to employ adequate security practices consistent with law and industry standards to protect this Private Information.

103.    Defendants still possess the Private Information of Plaintiff and the Class.

104.    Defendants have made no announcement that they have changed their data storage or security practices related to the Private Information.

105.    Defendants have made no announcement or notification that they have remedied the vulnerabilities and negligent data security practices that led to the Data Breaches.

106.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach. The risk of another data breach is very real, immediate, and substantial.

107.    The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another data breach occurs, Plaintiff and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by

employing reasonable prospective data security measures is relatively minimal, and Defendants has a pre-existing legal obligation to employ such measures.

108.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiff and Class Members, along with other consumers whose PII would be further compromised.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully demands a jury trial of all issues so triable and requests that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Class Counsel as requested in Plaintiff's expected motion for class certification;

B.    Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

C.    Ordering injunctive relief requiring Defendants to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free credit monitoring to all Class members indefinitely;

D.    Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and her counsel;

29

E.    Ordering Defendants to pay equitable relief, in the form of disgorgement and restitution, and injunctive relief as may be appropriate;

F.    Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G.    Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury.

Dated:  October 20, 2025.

Respectfully submitted,

**SHIVER HAMILTON CAMPBELL LLC**

*/s/ Kyle G.A. Wallace*
Kyle G.A. Wallace
Georgia Bar No. 734167
3490 Piedmont Road, Suite 640
Atlanta, Georgia 30305
Telephone: (404) 593-0020
Facsimile: (888) 501-9536
kwallace@shiverhamilton.com

Nicholas A. Migliaccio (*pro hac vice forthcoming*)
Jason Rathod (*pro hac vice forthcoming*)
MIGLIACCIO & RATHOD, LLP
412 H Street NE
Washington, D.C. 20002
202.470.3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

***Attorneys for Plaintiff***

30